OPINION OF THE COURT
Peter J. Benitez, J.
Defendant is charged in a superseding information with violating Administrative Code of the City of New York §§ 15-216 (a) and (b). Each of the Administrative Code violations is predicated upon the defendant’s alleged failure to comply with the requirements of the Rules of the City of New York (3 RCNY 39-01) (hereinafter referred to as Rules) which require a fire safety director to be on duty in certain buildings.
Defendant raises numerous challenges to the legal sufficiency of the accusatory instrument. First, defendant argues that the superseding information is invalid as it charges an *27 offense not charged in the original accusatory instrument and pleads new facts not pleaded in the original accusatory instrument. CPL 170.65 (2) specifically authorizes the prosecution to file a new information which alleges offenses different from those charged in the original accusatory instrument provided the new offense is based on the conduct which was the subject of the original accusatory instrument. In alleging new facts which amplify, amend or correct facts alleged in the original accusatory instrument the prosecution is not necessarily alleging different conduct. Rather, the court must examine the pleading to determine whether different conduct is alleged. Here the superseding information alleges new facts as to the nature and use of the building but continues to allege the failure to have a fire safety director in that building on a particular date. Accordingly, the superseding information was properly filed to replace the original pleading. (See, People v Con Edison, NYU, Apr. 6, 1993, at 29, col 3 [App Term, 1st Dept].)
Next, defendant challenges the facial sufficiency of the superseding information. Defendant raises several challenges to the sufficiency of the factual allegations. First, defendant argues that the building at issue here is not one that is subject to the Rules of the City of New York which have been charged as having been violated. Secondly, defendant argues that even if the building is one to which those Rules may be applicable, the People have failed to plead facts concerning the actual use of the building to bring it within the coverage of the Rules.
The Rules of the City of New York, insofar as they set forth the buildings to which they apply, read as follows: "(a) Scope. These rules and regulations shall apply to buildings or parts thereof classified in § 27-263 of the Administrative Code of the City of New York as occupancy group J-l, J-2 occupied or arranged to be occupied in whole or part by a transient occupancy. For the purpose of these rules and regulations, buildings or parts thereof which contain a total of more than 30 sleeping rooms or can accommodate a total of more than 30 lodgers, or contain more than 15 sleeping rooms or can accommodate more than 15 lodgers above the first or ground story, used for living or sleeping purposes by the same person or persons for a period of ninety days or less shall be considered as being occupied by a transient occupancy. Such buildings shall include but are not limited to buildings occupied as hotels, motels, lodging houses, dormitories and single room *28 occupancies. All such buildings occupied or arranged to be occupied in whole or part by a transient occupancy, regardless of the number of sleeping rooms or accommodations, over 75 feet in height, shall comply with these Rules and Regulations.” (3 RCNY 39-01 [emphasis added].)
Administrative Code §27-263 provides that buildings shall be classified as J-l, J-2 or J-3 when their use is residential. Administrative Code § 27-264 defines J-l occupancy group as a residential building "primarily occupied for the shelter and sleeping accommodation of individuals on a day-to-day or week-to-week basis.” Administrative Code § 27-265 defines J-2 occupancy group as buildings "primarily occupied for the shelter and sleeping accommodation of individuals on a month-to-month or longer-term basis.”
The prosecution alleges that the building at issue here is subject to the Rules by virtue of its being, "in effect,” classified as a J-l and being occupied or arranged to be occupied as a transient occupancy. First, the People assert that the building at issue here, which was never classified in its certificate of occupancy as a J-l dwelling, but rather, classified as a class-B hotel, is nevertheless the equivalent of a J-l classified building. As for its transient occupancy, the prosecution argues that a class-B hotel is a transient occupancy building as defined by the Multiple Dwelling Law which defines class-B multiple dwellings and that such defined transient occupancy is the equivalent of both a J-l defined transient occupancy building and as a Rule 39-01 transient occupancy building. With respect to the necessity of factual allegations concerning the building’s actual use for transient occupancy, the People argue that actual use need not be alleged and, if the court holds otherwise, may be inferred from its authorized use as set forth in its certificate of occupancy.
Defendant contends that the class-B building is not, by definition, the equivalent of a transient building subject to Rule 39-01 and, even if it is so, the actual use of the building for such transient use must be pleaded.
The first issue is whether the building is "classified in § 27-263 of the Administrative Code of the City of New York as occupancy group J-l” as required by Rule 39-01. The building here is classified by its certificate of occupancy as a class-B hotel. It was constructed prior to the effective date of the J-l classification law and has never been reclassified under that law. Yet, the prosecution argues that it is the equivalent of a *29 J-l classified building as, by its certificate of occupancy, it is classified by a classification definition which is the same as the classification definition for a J-l building and is, therefore, subject to the Rules. Accordingly, the court must determine whether the Rules require that a building actually be classified as J-l to be subject to those Rules or whether the definitional equivalent analysis is sufficient to render the Rules applicable.
Administrative Code § 27-263 provides that buildings used for residential purposes "shall be classified” J-l, J-2 or J-3. The Code clearly provides that building classifications under this classification system are to be made by the Commissioner of Buildings. (See, Administrative Code §§ 27-268, 27-222, 27-223.) Yet, the prosecution argues that a building that would be classified by its use as J-l had it been erected or altered after 1968 is nevertheless considered a J-l classified building for the purposes of the Rules of the City of New York which apply to certain J-l classified buildings. In effect, the prosecution argues that the Rules, in referring to buildings "classified in § 27-263 of the Administrative Code” does not mean that the building must be formally so classified in its certificate of occupancy, but rather, that it is so classified if it meets the definitional criteria for J-l buildings set forth in the Administrative Code.
The court agrees with that statutory construction. Were it otherwise, that a building must be formally designated J-l in its certificate of occupancy to be subject to the Rules, many pre-1968 constructed buildings which have not been altered and reclassified under the new classification system would not be subject to the Rules. There appears to be no basis for the City, in promulgating the Rules, to have deliberately left out from their coverage buildings that were classified under the pre-1968 classification system but meet the definitional criteria for those now classified as J-l.
The information alleges that the building is registered with the New York City Department of Housing Preservation and Development and its certificate of occupancy classifies it as a class-B hotel. Multiple Dwelling Law § 4 (9) which defines a class-B multiple dwelling as "a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals.” Therefore, as recognized by the courts in the unreported decisions submitted, a J-l building is the equivalent of a class-B multiple dwelling and is subject to the Rules *30 if it further satisfies the definition of transient use set forth in those Rules.
With respect to whether the building at issue does meet those further criteria set forth in the Rules as to transient use, the Rules expressly define transient occupancy for the purpose of that enactment, insofar as applicable to this case, as more than 30 sleeping rooms or accommodations for more than 30 lodgers used for living or sleeping purposes by the same persons or persons for a period of 90 days or less.
The prosecution argues that all J-l and their equivalent class-B buildings meet the definition of transient use under the Rules. The prosecution argues that transient occupancy as defined by Administrative Code § 27-263 and by Multiple Dwelling Law § 4 (9) is the same (as this court and others have found) and that the type of transient occupancy required by the Rules for the application of those Rules is, likewise, the same.
Defendant argues that not all J-l buildings, whether formally classified as such or meeting the definitional criteria for such classification, are covered by the Rules. Rather, defendant argues that while all J-l and class-B buildings are in some manner transient occupancy, the Rules are applicable only to such buildings that meet the definition of transient occupancy as specifically set forth in those Rules. Defendant argues that the definitions of J-l and class-B buildings define transient use more broadly and the Rules are, therefore, only applicable to the more limited type of transient occupancy building defined by those Rules. Accordingly, defendant argues that the accusatory instrument must allege the number of sleeping rooms in the building or the number of lodgers that can be accommodated and allege actual lodging of the same persons for 90 days or less.
The Rules, by their terms, apply to J-l buildings, and therefore, class-B buildings, that are occupied or arranged to be occupied as a transient occupancy as that term is further defined in the Rules. However, the definitions of transient occupancy as used in the Administrative Code and the Multiple Dwelling Law are different than the definition of that term in the Rules. Both the Administrative Code and Multiple Dwelling Law define transient occupancy without reference to the total length of stay of lodgers, the Administrative Code referring to transient occupancy as the "accommodation of individuals on a day-to-day or week-to-week basis” and the *31 Multiple Dwelling Law referring to transient occupancy as "the more or less temporary abode of individuals or families.” Yet, the Rules define transient occupancy as "occupied or arranged to be occupied * * * by the same person or persons for a period of ninety days or less.” One cannot say that all buildings arranged for day-to-day or week-to-week transient occupancy are arranged or occupied for use by the same persons for 90 days or less, as the same day-to-day and/or week-to-week lodgers may be permitted to continue occupancy for more than 90 days. Accordingly, the Rules define transient occupancy more specifically and restrictively than does the Administrative Code and the Multiple Dwelling Law.
The People argue that if the building is a transient occupancy building as defined by its certificate of occupancy the court may infer, for the legal sufficiency of a pleading, that its actual use is that for which it is authorized to be used and that proof of its actual use need only be proved, if at all, at trial. Generally, courts have accepted this argument. See unpublished opinions set forth in the prosecution’s memorandum of law submitted in opposition to defendant’s motion. However, those unreported decisions deal with buildings that have been classified J-l or class-B and the accusation is that provisions of the Administrative Code applicable to J-l buildings have been violated. Therefore, if a building has been formally classified in its certificate of occupancy as "transient” under a classification system which defines transient occupancy in the same way as the statute or regulation charged with having been violated defines transient occupancy, the court could infer that its actual use is the type of transient use for which it has been authorized to be used. However, where the building’s classification as transient is done under a classification system which defines transient authorized use differently than defined in the statute or regulation charged with having been violated, the inference process does not produce an inference of actual use as required by the operational statute and the People must allege facts in the accusatory instrument establishing use or arrangement for use as transient occupancy as defined by the statute or regulation charged with having been violated.
As noted, the definitions of transient occupancy as set forth in the Administrative Code and Multiple Dwelling Law do not parallel that used in the Rules which are charged as having been violated. Accordingly, as the classification systems contain different definitions of what constitutes transient *32 occupancy, the prosecution must plead the actual use or arranged use of the building in question and cannot establish such use by inference drawn from its authorized use as set forth in the building’s certificate of occupancy. Having failed to allege that the building here was used or arranged to be used for lodging of the same persons for 90 days or less, the information is legally deficient and is, therefore, dismissed.